AO 91 (Rev. 11/11)  Criminal Complaint

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
для the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
April 16, 2020
David J. Bradley, Clerk of Court

United States of America
v.
DMARCUS TRAVION CARTER

Case No. **4:20mj0662**

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  May 1, 2019 & November 1, 2019  in the county of  Harris  in the
 Southern  District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951(a) and 2 | Aiding and Abetting Interference with Commerce by Robbery |
| 18 USC 924 (c)(1)(A)(iii) and 2 | Aiding and Abetting Discharge of a Firearm in Relation to a Crime of Violence |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

David Helms, TFO for the FBI
*Printed name and title*

Sworn to me telephonically.

Date:  04/16/2020

*Judge's signature*

City and state:  Houston, TX

Honorable Dena Palermo
*Printed name and title*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Sergeant David Helms, affiant, hereby depose and state the following:

1. I am a Task Force Officer with the Federal Bureau of Investigation (hereafter "FBI") and a Sergeant with the Houston Police Department (hereafter "HPD") and have been employed by HPD since May 2006. During my employment with HPD and the FBI, I have trained in investigations relating to violations of the United States Federal Criminal Code, including Title 18 of the United States Code (hereafter "USC"), specifically criminal violations involving organized crime, bank robbery, kidnapping, interference with commerce by threats or violence, and extortions. I am currently assigned to the Houston Division of the FBI, Violent Crime Task Force (hereafter "VCTF"), and have been since April 2016. My primary investigative responsibilities include crimes occurring within the United States District for the Southern District of Texas.

2. The facts contained in this affidavit are based upon information provided to me by other law enforcement officers, other witnesses, and my own personal knowledge. Since this affidavit is made for the limited purpose of supporting a Criminal Complaint, I have not set forth each and every fact learned during the course of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the crimes charged. Unless otherwise indicated, where actions, conversations, and statements of others are related herein, they are related in substance and in part only.

3. On November 1, 2019, your Affiant was present during an attempted robbery of a Garda World truck at 16244 S. Post Oak Rd., Houston, TX, 77053, and within the Southern District of Texas. Affiant in conjunction with the Houston Police Department's Criminal Apprehension Team (hereinafter CAT), Special Weapons & Tactics (hereinafter SWAT), and FBI Violent Crime Task Force (hereinafter VCTF) investigated an armored car robbery crew that resulted in the attempted robbery. At approximately 11:32 A.M. Affiant observed a previously reported stolen white Ford F-250 parked at a car wash, Automation Washateria, at 16101 S. Post Oak, bearing Texas license plate KPG4802 with a full view of the Walgreens at 16244 S. Post Oak Rd. Houston, TX 77053. Garda armored truck, route #30, driven by Houston Police Department SWAT headed south on S. Post Oak till it entered the parking lot of its scheduled stop at Walgreens. Affiant observed the previously reported stolen vehicle leave the parking lot of the car wash and follow the Garda truck into the Walgreens lot. Affiant spoke directly with Officer CARLOS CALDERON (hereinafter CALDERON) who stated he was parked in the parking lot of the Walgreens in an unmarked vehicle with full view of both the armored truck and stolen Ford F-250. CALDERON stated as the armored truck entered the parking lot of Walgreens it moved toward the front entrance of the business for its scheduled stop. CALDERON stated he observed the armored vehicle open its door. CALDERON stated as the armored truck opened its door a passenger in the stolen Ford F-250 opened the rear passenger door. After hearing radio transmission of the suspect vehicle approaching, SWAT Officers inside the Garda truck quickly closed the door to the armored truck.

4. As Officers converged on the stolen vehicle, the vehicle fled the parking lot traveling over a median at S. Post Oak and entering a strip center in the 16100 block of S. Post Oak. The stolen vehicle driven by identified subject JEREMY BONIABY (hereinafter BONIABY) drove to the rear of the strip center across from the Walgreens. At the very north end of the parking lot, BONIABY exited the vehicle wearing gloves and a hooded sweatshirt. BONIABY fled on foot while SWAT pursued. Commander LARRY BAIMBRIDGE (hereinafter BAIMBRIDGE) took BONIABY into custody while he ran southbound through the strip center. Subject CORDEAS SIMMONS (hereinafter SIMMONS) exited the back seat of the vehicle, fled on foot and was taken into custody by Houston Police Department SWAT. SIMMONS was shedding his gloves and a mask as he ran from law enforcement. The front seat passenger, BRODNEY GARDNER (hereinafter GARDNER), exited the stolen vehicle with an assault rifle which he discharged at Houston Police Department SWAT.

5. BONIABY was interviewed at which time he was read his statutory warnings and agreed to speak with Affiant and Special Agent JEFF COUGHLIN (hereinafter COUGHLIN). BONIABY stated he was in the stolen vehicle with SIMMONS and GARDNER who he knew as "BRAES". BONIABY stated his role was to drive the stolen vehicle. BONIABY stated he knew the intended target was the Garda armored truck while it delivered at the Walgreens. BONIABY stated he knew GARDNER had an assault rifle. BONIABY stated he knew GARDNER seated in the front seat passenger had a mask on when they approached the armored truck. BONIABY stated GARDNER picked him up in the morning and drove him to the stolen vehicle. BONIABY stated he then drove to a neighboring area close to the Walgreens where SIMMONS and

GARDNER entered the stolen vehicle. BONIABY stated he remained in the vehicle with SIMMONS and GARDNER at the car wash until observing the Garda armored truck.

6. GARDNER was interviewed post arrest and read his statutory warnings agreeing to speak with law enforcement. GARDNER stated sometime in September of 2019 he was contacted by DMARCUS TRAVION CARTER (hereinafter CARTER). GARDNER stated CARTER inquired if he wanted to make some money knowing GARDNER was going through financial trouble. GARDNER knew getting money meant through illegal means but at the time did not know the extent. GARDNER stated he was instructed to come to CARTER's residence. GARDNER learned CARTER was put on an ankle monitor stemming from an armored car robbery he is currently charged in out of Harris County and could not leave his residence. GARDNER stated when he arrived at CARTER's house he found both CARTER and SIMMONS at the residence. GARDNER stated CARTER and SIMMONS then showed him video news clips of armored car robberies for which they claimed responsibility. GARDNER stated he watched multiple videos of armored car robberies but specifically he watched a video clip of an armored car robbery on May 1, 2019 at a meat market. GARDNER stated SIMMONS and CARTER liked to rob armored cars at meat markets because some had check cashing businesses inside. GARDNER stated CARTER told him they got $250,000.00 in that robbery. The loss amount was $249,000.00 which was not disclosed to the public at any time. GARDNER stated CARTER had explained that law enforcement believed he had shot himself during the robbery but he had merely sprained his ankle. In reviewing the surveillance of the event, there is a subject who discharges a

firearm upon contact with the armored car courier, initially law enforcement did believe the bullet could have struck the subject. Affiant asked GARDNER about the stolen vehicle used in the incident. GARDNER stated it was either a Dodge Caravan or Ford F-150 because that is all SIMMONS and CARTER knew how to steal. The vehicle used in the incident was a Dodge Caravan. GARDNER further stated that CARTER recruited him into the armored car robbery crew stating he was still involved leading up to the November 1, 2020 incident described above. GARDNER stated CARTER was going to get a part of the stolen money from November 1, 2019 robbery for his participation in recruiting GAARDNER and putting the plan together. GARDNER stated CARTER made it clear that he was going to bond his brother out of jail with the money. Affiant learned CARTER's brother was being held in Beaumont on unrelated charges. GARDNER stated on the days leading up to the attempted armored car robbery there were several failed attempts. GARDNER stated on those days October 22, 2019 and October 29, 2019 the group met and left from CARTER's house while CARTER was present. Affiant listened to an audio recording of CARTER, SIMMONS, BONIABY, and GARDNER after a failed attempt on October 22, 2019. Affiant knows the voices of the individuals having previously spoken to each and conducted face to face interviews. An argument begins between SIMMONS and BONIABY over who was responsible for up keep of the stolen vehicles. CARTER is overheard saying something to the effect, if it wasn't meant to be we'll just try again.

7. On May 1, 2019 at approximately 10:08 am, a Brinks armored vehicle was making a scheduled delivery of $249,000.00 to Mexico Lindo Market at 1508 Houston Blvd., South Houston, Harris County, Texas, 77587. A Brinks courier, RHONDA REED-

HAWKINS (hereinafter REED-HAWKINS) exited the armored vehicle with her courier bag and entered the location. REED-HAWKINS stated she felt someone running up behind her and striking her with what she felt was the butt of a gun essentially pistol whipping her. REED-HAWKINS stated after being struck on the right side of the head she was pushed to the ground. REED-HAWKINS stated the money bag dropped to the ground. Upon hitting the ground REED-HAWKINS stated she heard the gun go off and thought she had been shot. REED-HAWKINS stated all she could she is the UNSUB standing over her with a white face covering on. REED-HAWKINS stated she laid there for a second fearing she had been shot and observing the UNSUB run.

8. Detective JESSICA BRUZAS (hereinafter BRUZAS) spoke with the armored car driver EZEQUIEL VELASQUEZ (hereinafter VELASQUEZ), VELASQUEZ stated he looked around the parking lot and as he scanned back towards the store's entrance, he observed two UNSUBS running into the store holding assault rifles. VELASQUEZ stated he immediately turned on his audible alarm and began honking his horn. VELASQUEZ said he then looked out his rear view mirror on the right side of the truck and observed a third unknown black male UNSUB standing near the right rear quarter panel of the truck. VELASQUEZ stated he then observed the first two UNSUBS run out of the store. VELASQUEZ stated UNSUB #1 ran out holding the cash bag and his assault rifle and UNSUB #2 ran out holding his assault rifle pointed towards the truck, ready to fire on it. VELASQUEZ stated he then observed all three UNSUBS run off towards the funeral home located next to the store.

9. Affiant reviewed surveillance from both the Mexico Lindo Market and the adjacent funeral home. Surveillance showed a white minivan at the funeral home. The door to the

van opens and three UNSUBS exit two armed with an assault rifles, one with a pistol. The two UNSUBS armed with assault rifles enter the market while the third UNSUB remains at the back corner of the armored vehicle in a lookout position. As the UNSUBS with assault rifles enter the market they come up behind REED-HAWKINS striking her which causes her to go to the ground. The courier bag goes down and is picked up by one of the UNSUBS. In the course of striking REED-HAWKINS and taking the courier bag the rifle goes off. The UNSUBS then exit the store and load back into the white minivan. This van is recovered blocks away from the incident, the same day.

10. Affiant obtained a warrant for cellular telephone records for CARTER stemming from a warrant issued out of Harris County, for his role in a in an armored car robbery from December 28, 2017 at 15252 Wallisville Road in Harris County, Texas. The warrant was filed by Deputy CHRIS HUDSON (hereinafter HUDSON), Harris County Sheriff's Office. Affiant also obtained cellular telephone records for BARRINGTON REYNOLDS (hereinafter REYNOLDS), CARTER's brother, who is also charged in the same armored car robbery as CARTER. CARTER was arrested on May 8, 2019 pursuant to a state warrant. At the time of his arrest, CARTER was in a vehicle with ASHTON RICHARDSON (hereinafter RICHARDSON, SIMMONS, and ASHLEY TAYLOR (hereinafter TAYLOR) all occupants in the vehicle with the exception of CARTER were in possession of large sums of money in excess of $1000.00. CARTER, SIMMONS, and RICHARDSON were headed to the airport to travel to California. Affiant learned through his investigation that SIMMONS and CARTER are longtime friends and RICHARDSON is CARTER's cousin. Affiant learned TAYLOR is in a long term relationship with CARTER and they reside together.

11. Affiant reviewed the phone records with Officer TRENTON BICKFORD (hereinafter BICKFORD) of the Houston Police Department, Criminal Intelligence Division. In reviewing the records specifically on May 1, 2019, CARTER, SIMMONS, and JEREMY BONIABY (hereinafter BONIABY) are communicating with a cellular tower at 0351 hours consistent with 11150 Beamer, where the stolen vehicle used in the armored car robbery was taken from. At 0430 hours SIMMONS is communicating with a cellular tower consistent with BONIABY's residence. At 09:20 a.m. CARTER, SIMMONS, and REYNOLDS are communicating with cellular towers consistent with the 3911 Highpoint, Houston Texas. This address is where both REYNOLDS and CARTER resided growing up. CARTER's mother still resides at that location. Affiant knows throughout the morning, leading up to and during the robbery, the number, (281)865-3412, associated with TRENTON GARRETT (hereinafter GARRETT) placed multiple calls to REYNOLDS, BONIABY, RICHARDSON and CARTER. These calls went unanswered and showed the phones in an area consistent with 3911 Highpoint. After the robbery at approximately 1054 hours the first communication by both BONIABY and CARTER is an outgoing call to the GARRETT.

12. Based on the foregoing facts, your Affiant believes there is probable cause to believe that on May 1, 2019, DMARCUS TRAVION CARTER, aiding and abetting others known and unknown did knowingly and intentionally take and obtain property from Brinks by means of actual and threatened force, violence, and fear of injury to those in lawful possession of that property and CARTER did obstruct, delay and affect interstate commerce and the movement of articles and commodities in commerce by means of robbery in violation of Title 18 U.S.C. Section 1951(a) and 2.

13. Further based on the forgoing your Affiant believes there is probable cause to believe that on May 1, 2019, DMARCUS TRAVION CARTER aiding and abetting others known and unknown did knowingly and intentionally discharge a firearm during and in relation to a crime of violence that being interference with commerce by robbery in violation of Title 18 U.S.C. Section 924(c)(1)(A)(iii) and 2.

14. Based on the foregoing facts, your Affiant believes there is probable cause to believe that on November 1, 2019, DMARCUS TRAVION CARTER, aiding and abetting others known and unknown did knowingly and intentionally attempt to take and obtain property from GardaWorld by means of actual and threatened force, violence, and fear of injury to those in lawful possession of that property and CARTER did obstruct, delay and affect interstate commerce and the movement of articles and commodities in commerce by means of robbery in violation of Title 18 U.S.C. Section 1951(a) and 2.

15. Further based on the forgoing your Affiant believes there is probable cause to believe that on November 1 ,2019, DMARCUS TRAVION CARTER aiding and abetting others known and unknown did knowingly and intentionally discharge a firearm during and in relation to a crime of violence that being interference with commerce by robbery in violation of Title 18 U.S.C. Section 924(c)(1)(A)(iii) and 2.

_____
TFO David Helms
Houston Police Department


Sworn to telephonically on this __16th__ day of April 2020, and I find probable cause exists.

_____
Hon. Dena Palermo
United States Magistrate Judge